IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JOHN FLORES,

                    Plaintiff,

                                        Civil Action No.
          vs.                           5:96-CV-0820 (DEP)

GRAPHTEX, A DIVISION OF HUMAN
TECHNOLOGIES CORP.,

                    Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

BOND, SCHOENECK & KING, PLLC[1]   SUZANNE M. MESSER, ESQ.
One Lincoln Center              JAMES P. WRIGHT, JR., ESQ.
Syracuse, New York 13202-1355

FOR DEFENDANT:

KERNAN & KERNAN, P.C.           MEGAN E. DORR, ESQ.
258 Genesee St.
Suite 600
Utica, New York  13502

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

_____

          [1]      Shortly prior to commencement of the trial in this matter, the firm of
Bond, Schoeneck & King, PLLC was assigned to represent the plaintiff, who until then
had been proceeding *pro se*.  The court appreciates the extensive energy and effort
expended on plaintiff's behalf, *pro bono*, by the attorneys designated by that firm to
handle the matter.

DECISION AND ORDER

Plaintiff John Flores, who is of Hispanic ethnicity, has commenced this action against defendant Graphtex, a division of Human Technologies Corp. ("HTC"), asserting claims of employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*  Plaintiff alleges that based upon his national origin, and because he previously brought suit against HTC under Title VII complaining of discrimination, his employment was unlawfully terminated by HTC in December of 1994, and seeks damages, including though not limited to back pay, resulting from the violation.

Plaintiff's claims were tried to the court on June 1, 2009.[2]  Based upon the evidence adduced at trial, I find that plaintiff failed to prove that defendant took adverse employment action against him, a requirement of proving both discrimination and unlawful retaliation under Title VII, and further conclude that even assuming the existence of such adverse action, Flores failed to establish that it was motivated by either his national origin or out of retaliation for his earlier, protected activity.  The following decision incorporates within it my findings of fact and legal conclusions

---

[2]      This matter is before me on consent of the parties, pursuant to 28 U.S.C. § 636(c).  *See* Dkt. No. 97.

regarding the matter.

I.      BACKGROUND

Plaintiff John Flores is forty-nine years of age and lives in Utica, New York.  Plaintiff is of Hispanic origin and suffers from a disability of an undisclosed nature.[3]  Flores has a third grade education, and is currently unemployed.  Plaintiff receives supplemental security income ("SSI") benefits under the Social Security Act, having applied for those benefits since leaving the employ of HTC.

HTC is a sheltered workshop operated to serve disabled workers, and is certified by the New York State Office of Mental Health.  HTC employs individuals in a variety of occupations, and offers disabled workers the opportunity both to be employed within HTC and to learn skills for use outside of the HTC environment with more traditional employers.

At the relevant times Graphtex functioned as a division of HTC. Graphtex was formed to operate under a corporate business model, with a goal of hiring an equal mix of non-disabled employees and disabled workers, the latter being referred to as "participants" or "trainees". Graphtex provides goods and services to a variety of municipal and

---

[3]      Plaintiff does not allege discrimination on the basis of his disability in this action.

private customers, including the State of New York.

Plaintiff first became employed with HTC in 1990, but left work in 1992 after a disagreement with one of his supervisors.  Plaintiff's separation from employment with HTC in 1992 led to his filing of an administrative complaint with the New York State Division of Human Rights, and ultimately to commencement of an action in this court on July 30, 1993, encaptioned *Flores v. Human Technologies Corporation,* 93-CV-1015 (N.D.N.Y., filed 1993) ("*Flores I*").  That action was settled on or about October 4, 1994.  As part of the *Flores I* settlement, HTC agreed to reinstate the plaintiff.

Plaintiff subsequently returned to work in or about October of 1994 and was assigned to a position as a silk screener at Graphtex, working between 8:00 a.m. and 4:00 p.m. each day, Monday through Friday.  Plaintiff was compensated for his work at Graphtex based upon the number of pieces which he produced, typically averaging between eighty and one hundred dollars per day.

On December 16, 1994 plaintiff was informed by his supervisor, John Thorp, that he and at least one other disabled worker were being temporarily laid off from Graphtex based upon lack of available

4

work.  Plaintiff's layoff was necessitated by a shortage of silk screening

work at the company, beginning in or about November of 1994.  The other

silk screen operator at Graphtex, Candido Garcia, who like plaintiff is of

Hispanic national origin, was chosen over Flores for retention based upon

the fact that Garcia was the more experienced of the two employees.

When making the job cuts at Graphtex, company officials decided to

transfer the laid-off workers to the HTC work center.  Plaintiff was told that

it looked like there was work available for him at HTC, and was instructed

by Thorpe to report to HTC for assignment of work during the layoff

period.[4]  Plaintiff went to HTC on December 19, 1994, the next work day,

and awaited instructions concerning another position.   After waiting from

7:30 a.m., when he first arrived, until 8:05 a.m. of that day but receiving no

work assignment, plaintiff called Dave LaValla, the Vice President of

Business Operations for HTC and Thorpe's supervisor, to advise him of

---

[4]        Plaintiff testified that Thorp told him to report to HTC to see if there was
work available for him.  In his original complaint, however, plaintiff alleged that Thorp
advised him it looked like there was work available at HTC.  Plaintiff's counsel objected
to consideration of matters asserted in his original complaint, in light of the fact that it
has been amended.  Plaintiff's original complaint, however, which was in fact sworn,
constitutes an admission and is therefore properly considered by the court.  *Austin v.
Ford Models, Inc.,* 149 F.3d 148, 155 (2d Cir. 1998), *cert denied*, 537 U.S. 848, 123 S.
Ct. 189 (2002); *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.,* 32 F.2d 195,
198 (2d Cir. 1929), *cert denied*, 280 U.S. 579, 50 S. Ct. 32 (1929).

his circumstances.[5]  During that conversation Flores advised LaValla that

he was upset, and was hearing voices telling him to purchase a gun and

shoot people at Graphtex.  LaValla recommended that plaintiff should see

a doctor, and Flores agreed.  Plaintiff then left, and was later paid for all

unused sick leave time and, after exhaustion of accrued sick leave, was

placed on medical leave of absence.

Plaintiff spoke with LaValla again shortly after Christmas of 1994.  At

that time Flores informed LaValla that he needed more time off from work,

and was granted a further leave of absence.  Plaintiff, who by all accounts

was regarded by HTC as a competent employee, was informed by LaValla

that he could return to HTC when his health had improved, and during the

trial Flores acknowledged having been told that.

At some point following the December 1994 layoff from Graphtex,

plaintiff attempted to reopen *Flores I*.  That effort prompted a letter from

HTC's counsel of record in that action, Stewart D. Pratt, Esq., dated

September 18, 1995, advising the court that plaintiff had been asked by

company officials to return to work after seeing a doctor, but never

---

[5]     While Flores did not testify at trial concerning the precise timing of events on December 19, 1994, his initial complaint in this action, which is properly considered, *see Andrews v. Metro North Commuter Railroad Co.*, 882 F.2d 705, 707 (2d Cir. 1989), provides this missing information.

returned.  The letter also pointed out that plaintiff had filed applications for

disability and workers' compensation benefits, and that in light of the

circumstances the company viewed plaintiff as having abandoned his

position.[6]  Plaintiff has been unemployed since leaving Graphtex, although

he has applied for and is receiving SSI benefits.[7]

II.    <u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action on May 21, 1996.  Dkt. No. 1.  Since

its inception, this case has had a relatively tortured history, in part

accounting for its age.  The action has twice been dismissed, once for

failure to comply with a directive, issued by Senior District Judge Howard

G. Munson, that plaintiff file an amended complaint to cure deficiencies

perceived in the original proceeding, and later based upon plaintiff's

failure to prosecute, following a lengthy period of inaction.  The action was

most recently reinstated in September 30, 2006, and was reassigned to

Chief District Judge Norman A. Mordue.

---

[6]    After reviewing the matter, then-District Judge Rosemary S. Pooler issued an order declining to reopen the settled *Flores I* action.  *See* 93-CV-1015, Dkt. No. 22.

[7]    The record is equivocal concerning whether plaintiff ever received workers' compensation benefits as well.  While the parties have stipulated that no such benefits were received, *see* Joint Pretrial Stipulation (Dkt. No. 104) ¶ 10, at trial plaintiff testified to receiving a settlement of $3000 or $3500 in connection with his workers' compensation claim.

On July 31, 2008 the defendants named in plaintiff's complaint, which included HTC as well as John Thorp, Dave LaValla, Candido Garcia, Anthony Cutarri, Tony Putachi and John Turdi, moved for the entry of judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. No. 83. Ruling on that motion, Chief Judge Mordue issued a memorandum-decision and order dated December 23, 2008, dismissing plaintiff's employment discrimination claim against the individual defendants originally named by Flores, but finding that plaintiff had pleaded sufficient facts to demonstrate the existence of plausible claims of discrimination on the basis of national origin, and for retaliation, against HTC.[8,9]  *See id.*

Following a transfer of the matter from the earlier-assigned magistrate judge to me, and the parties' consent to my jurisdiction, the

---

[8]   In his decision Chief Judge Mordue also rejected defendants' contention that plaintiff failed to comply with the requirement that he commence action within ninety days of his receipt of a right to sue letter from the Equal Employment Opportunity Commission ("EEOC"). *See* Dkt. No. 87, *slip op. at* p. 8.

[9]   Plaintiff's amended complaint, the operative pleading now before the court, does not make specific reference to a claim of retaliation. In his decision dated December 23, 2008 addressing defendants' motion for judgment on the pleadings, however, Chief Judge Mordue interpreted plaintiff's complaint as asserting a claim of retaliation, in light of his *pro se* status and the fact that he had raised retaliation as a ground for his related complaint filed with the New York State Division of Human Rights. *See* Memorandum-Decision and Order dated December 23, 2008 (Dkt. No. 87) at p. 7.

matter was tried to the court on June 1, 2009.  At the close of plaintiff's

case, HTC moved for judgment on partial findings, pursuant to Rule 52(c)

of the Federal Rules of Civil Procedure.[10]  Decision was reserved in

connection with that motion.  At the close of the trial, decision was once

again reserved with respect to a final verdict in the action.

III.   DISCUSSION

A.   General Legal Principles Applicable To Plaintiff's Claims

The legal principles governing plaintiff's discrimination claims are by

no means controversial.  Title VII prohibits an employer from taking

adverse employment action against any person based upon the

individual's race, color, religion, sex, or national origin.  42 U.S.C. § 2000-

e-2(a)(1); *see Kessler v. Westchester County Dep't of Social Services,*

---

[10]      Rule 52(c) provides, in pertinent part, that

> [i]f a party has been fully heard on an issue
> during a nonjury trial and the court finds
> against the party on that issue, the court may
> enter judgment against the party on a claim or
> defense that, under the controlling law, can be
> maintained or defeated only with a favorable
> finding on that issue.

Fed. R. Civ. P. 52(c).  That rule goes on to provide, however, that in response to such a motion the court may defer the entry of judgment until the close of proof, a course of action which I have chosen.  *Desiderio v. Celebrity Cruise Lines, Inc.*, No. 97 Civ. 5185 (AJP), 1999 WL 440775 at *19 (S.D.N.Y. June 28, 1999) (Peck, M.J.) (citing, *inter alia*, 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, Civil 2d).

461 F.3d 199, 206 (2d Cir. 2006); *De la Cruz v. New York City Human Res. Admin. Dep't of Social Services*, 82 F.3d 16, 21 (2d Cir. 1996).  Title VII also provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).  *See Kessler,* 461 F.3d at 205; *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir. 2005).

Plaintiff claims that defendant has discriminated against him based upon his national origin and in retaliation for having engaged in protected activity.  To prevail, plaintiff must prove that he suffered an adverse employment action, and that it was the product of either discrimination on the basis of his national origin or retaliation – that is, that one or both of those considerations was a motiving factor in the challenged employment decision.  *Holcomb v. Iona Coll.,* 521 F.3d 130, 137-38 (2d Cir. 2008); *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 78-79 (2d Cir. 2001); (collecting cases); *see* 42 U.S.C. § 2000e-2(m) ("an unlawful employment practice is established when the complaining party demonstrates that [a

protected classification] was a motivating factor for any employment practice, even though other factors also motivated the practice.").

Employment discrimination claims brought under Title VII are generally analyzed through use of a framework which traces its origin to the Supreme Court's decision in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973), and which was later reiterated and refined in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1092-93 (1981) and *St. Mary's Honor Ctr.  v. Hicks*, 509 U.S. 502, 506, 113 S. Ct. 2742, 2746-47 (1993).  Under the *McDonnell Douglas* protocol, a plaintiff must first establish a *prima facie* case of discrimination.  *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S. Ct. 1817; *Holtz*, 258 F.3d at 76 (citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 2106 (2000)).  Upon establishment of a *prima facie* case, the burden of production shifts to the defendant, who at that juncture must come forward and articulate a legitimate, non-discriminatory reason for the adverse employment action in issue.  *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S. Ct. 1817; *Holtz,* 258 F.3d at 77 (quoting *James v. New York Racing Ass'n,* 233 F.3d 149, 154 (2d Cir. 2000)); *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir.

2003).  Once the employer has successfully shouldered this burden, the focus then reverts to the plaintiff, who must establish that the alleged, non-discriminatory rationale offered did not genuinely prompt the adverse action, but instead is a mere pretext for discrimination.  *McDonnell Douglas Corp.*, 411 U.S. at 804, 93 S. Ct. 1817; *Graham v. Long Island R.R.,* 203 F.3d 34, 43 (2d Cir. 2000) (citing *Hargett v. Nat'l Westminster Bank,* USA, 78 F.3d 836, 839 (2d Cir. 1996) *cert denied*, 519 U.S. 824, 117 S. Ct. 84 (1996)). While under the *McDonnell Douglas* paradigm the burden of production alternates back and forth between the parties, a plaintiff claiming intentional discrimination is tasked ultimately with establishing discrimination by a preponderance of the evidence.  *Texas Dep't of Community Affairs,* 450 U.S. at 253, 101 S. Ct. 1089; *Holcomb,* 521 F.3d at 138.

B.    Plaintiff's *Prima Facie Case*

To establish a *prima facie* case of employment discrimination, a plaintiff is required to show that he or she 1) is a member of a protected class; 2) was qualified for the position in issue; and 3) suffered an adverse employment action; and further that 4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.

12

*McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S. Ct. 1817; *Graham*, 230

F.3d at 38; *Roge v. NYP Holdings, Inc.,* 257 F.3d 164, 168 (2d Cir. 2001).

To establish a *prima facie* case of retaliation, plaintiff must establish that

1) he or she participated in a protected activity of which the defendant was

aware; 2) adverse employment action was taken to the disadvantage of

the plaintiff; and 3) there existed a causal connection between the

protected activity and subsequent adverse employment action.  *Quinn v.*

*Greentree Credit Corp.,* 159 F.3d 759, 769 (2d Cir. 1998); *Richardson v.*

*Comm'n on Human Rights* & *Opportunities*, 532 F.3d 114, 123 (2d Cir.

2008); *Feingold v. New York,* 366 F.3d 138, 156 (2d Cir. 2004).  The

burden of establishing a *prima facie* case of discrimination or retaliation,

while not particularly daunting, rests with the plaintiff.  *Texas Dep't. of*

*Community Affairs,* 450 U.S. at 253, 101 S. Ct. 1089; *Holcomb,* 521 F.3d

at 138; *Luciano v. Olsten Corp.*, 110 F.3d 210, 215 (2d Cir. 1997);

*Windham v. Time Warner, Inc.,* 275 F.3d 179, 187 (2d Cir. 2001).

The parties' disagreement in this action regarding the plaintiff's

required *prima facie* showing for both his discrimination claim and in

connection with the retaliation prong of his complaint centers upon the

adverse employment action element.  As defendant argues, the evidence

13

adduced at trial does not support a finding that plaintiff was fired from

HTC.   While plaintiff undeniably was laid off from Graphtex on December

16, 1994, he was informed to report to the headquarters of HTC, its parent

company, for further work.  Having done so, plaintiff spoke with David

LaValla, Jim Thorp's supervisor, and informed Lavalla that he was unable

to work based upon his emotional condition.  It was agreed that plaintiff

would seek out medical attention, and be considered by HTC as out on

medical leave during the interim.  It was the understanding of both parties,

however, as acknowledged by plaintiff during his trial testimony, that when

he felt better he could return to work.  It was not until September of 1995,

when he received the letter of HTC's counsel to the court in *Flores I*, that

Flores formed the impression that he had been considered to have

resigned and that there was no work for him.  Despite the clear

understanding that he could return to HTC, plaintiff took no measures

prior to September of 1995 to contact HTC and seek a return to work.

The evidence at trial established that while defendant was prepared

to assign plaintiff work at HTC, it was a result of plaintiff's decision to take

sick leave and seek medical attention that he was not put to work at HTC

on December 19, 1994.  Plaintiff's inaction thereafter between December

14

of 1994 and September of 1995, was plainly sufficient to permit HTC to conclude that he had abandoned his position, particularly absent any contention that he remain disabled during that entire period and so informed his employer. *Quinones v. C.L.B. Check Cashing, Inc.,* No. 07 Civ 281 (LAP), 2008 WL 5147029 at *4 (S.D.N.Y. Dec. 4, 2008); *Jackson v. Nor Loch Manor Healthcare Facility,* 297 F. Supp. 2d 633, 636 (W.D.N.Y. 2004).

It is true that in certain circumstances a transfer between positions within a company can be deemed to constitute an adverse employment action. *See, e.g. Rodriguez v. Bd. of Educ.,* 620 F.2d 362 (2d Cir. 1980) (transfer may be deemed sufficiently adverse if resulting in such a change in responsibilities as to represent a set back in plaintiff's career). Consequently, plaintiff could argue that the layoff at Graphtex and resulting in transfer to HTC was itself an adverse employment action. To be considered sufficiently adverse for Title VII purposes, however, a change in job circumstances within a company must "constitute a set back to the plaintiff's career," a "purely lateral transfer . . . cannot give rise to the level of a materially adverse employment action." *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 641 (2d Cir. 2000) (citing

15

Rodriguez, 620 F.2d at 366; *Williams v. Bristol-Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir. 1996)).  When such a transfer, for example, is accompanied by a diminution in salary, or exposes the plaintiff to less desirable work terms and conditions, a factfinder could conclude an adverse action has been taken by the employer.  *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (quoting *Sanders v. New York City Human Res. Admin.,* 361 F.3d 749, 755 (2d Cir. 2004); *Terry*, 336 F.3d at 138 (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993)).

In this case plaintiff presented no evidence, nor is there any in the record, to suggest plaintiff's reassignment to HTC from Graphtex was accompanied by a diminution in pay or exposure to less desirable work conditions.  A "minor ministerial stumbling block cannot constitute an adverse employment action if it lacks 'sufficiency deleterious' effect." *Galabya*, 202 F.3d at 640 (quoting *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 466 (2d Cir. 1997)).  Accordingly, plaintiff has failed to establish by a preponderance of the evidence that he experienced an adverse employment action by virtue of being transferred from Graphtex to HTC.  *Galabya*, 202 F.3d at 641.

In sum, the evidence at trial failed to show that plaintiff was subjected to an adverse employment action by defendant in and after December of 1994.  Because plaintiff has failed to establish this critical element of his *prima facie* case of both discrimination on the basis of national origin and unlawful retaliation, I find against the plaintiff and will direct the entry of judgment accordingly.

C.    Defendant's Articulated, Non-Discriminatory Reason For The
       Graphtex Layoff

In the face of plaintiff's claim that a *prima facie* case of discrimination on the basis of national origin and retaliation were established, at trial defendant explained the reasons for laying him off at Graphtex and transferring him to HTC.  According to David LaValla, the business of Graphtex tended to fluctuate seasonally, with business at the beginning and end of each year tending to be slower than during mid-year.  Consistent with this pattern, demand for product at Graphtex began to fall off around Thanksgiving of 1994.  As a result, the company could no longer justify continued employment of two silk screen operators.  When faced with the choice of laying off either the plaintiff or Candido Garcia, the other silk screen operator, a decision was made by John Thorp to select Garcia for retention in light of the fact that he was the more

17

experienced silk screen operator.  This explanation suffices to meet defendant's burden of articulating a legitimate, non-discriminatory basis for the employment decision in issue.

    D.    Pretext/Discrimination

    With the articulation of defendant's non-discriminatory rationale for making the disputed transfer, it became incumbent upon Flores to establish both pretext and that either his national origin or having engaged in protected activity, or both, were motivating factors in the decision to lay him off at Graphtex.  I find that plaintiff has failed to make that required showing by a preponderance of the evidence.

    The record is devoid of any indication that plaintiff's national origin played any role in the decision at issue.  Indeed, the two silk screen operators under consideration for layoff from Graphtex in December of 1994 were both Hispanic, with one having been laid off, and the other retained.   Under these circumstances, with no other evidence of animus on the basis of national origin having been offered, plaintiff has failed to prove discrimination on that protected basis.

    Plaintiff argues that however weak his case of national origin discrimination may be, his retaliation claim is strong based upon the fact

that it was only some two and one-half months after settlement of *Flores I*

that the layoff occurred.  It is true that in certain circumstances a relatively

short interval between protected activity and allegedly resulting retaliatory,

adverse action can give rise to an inference discrimination.  *Lovejoy-*

*Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 224 (2d Cir. 2001)

(quoting *Cifra v. G.E. Co.,* 252 F.3d 205, 216 (2d Cir. 2001)).  In this

instance, however, any such inference is weak, at best, and plainly

insufficient to satisfy plaintiff's burden of establishing by a preponderance

of the evidence that his earlier protected activity motivated the decision to

lay him off.  Indeed, the decision to transfer plaintiff to another HTC

position effectively negates any inference of retaliation; had defendant

truly desired to exact retribution for plaintiff having commenced *Flores I*, it

stands to reason that it would have terminated plaintiff's employment

altogether, rather than merely transferring him to another part of the

company.

In short, the evidence adduced at trial convincingly establishes that

plaintiff's transfer from Graphtex to HTC was the result of a business

decision necessitated based upon a lack of work, and was not affected by

either his national origin or the fact of his prior Title VII complaint.

IV.   SUMMARY AND CONCLUSION

It is uncontradicted that plaintiff was laid off from Graphtex on December 16, 1994 and told to report to HTC, of which Graphtex is a subsidiary, for work.  No evidence was presented at trial, however, to the effect that plaintiff's transfer to HTC adversely affected the terms and conditions of his employment.

Plaintiff acknowledges that on December 19, 1994, the following work day, he informed a management official at HTC that he felt unable to work because he was hearing voices, and was therefore placed on a medical leave of absence, initially with pay but later unpaid, and advised to see a doctor.  Plaintiff acknowledges his understanding that once he was cleared for work he was welcome to return to HTC, but never did. Under these circumstances plaintiff cannot establish that adverse action was taken against him by defendant, and as such cannot establish a *prima facie* case of discrimination under Title VII.  Simply stated, it appears that, for whatever reason, plaintiff failed to make the appropriate inquiries at HTC expressing his ability and interest in returning to work, and accordingly was properly treated by the company as having abandoned his position.

20

Even assuming plaintiff could establish a *prima facie* case of discrimination, defendant articulated a legitimate, non-discriminatory reason for the adverse decision in issue, and in the face of that explanation plaintiff failed to establish by a preponderance of the evidence that the articulated reason was pretextual and that he was discriminated against on the basis of his national origin, or in retaliation for having engaged in protected activity.  Under the circumstances, it is therefore hereby

ORDERED that the clerk shall enter judgment in favor of defendant and against plaintiff in connection with all remaining claims in this action, and dismissing plaintiff's complaint in all respects.

Dated:     June 15,  2009
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge